**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A04–9908–JV–357.**

Court of Appeals of Indiana.

Aug. 2, 2000.

3. Testator's First Will, dated October 20, 1996, designated Verdi as the sole heir to his estate.

Steven J. Halbert, Indianapolis, Indiana, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Yvonne M. Carter, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge

A.B. appeals a true finding that he committed juvenile delinquency by engaging in acts that would constitute the offense of Criminal Gang Intimidation,[1] a class C felony, if committed by an adult. A.B. challenges the sufficiency of the evidence as the sole issue upon appeal.

We affirm.

The facts favorable to the true finding are that Keith Brents and A.B. were students at Fulton Junior High School in Indianapolis. While at school sometime in March 1999, A.B. asked Brents to join his gang, which he identified as Deuces and Assassins (the Assassins).[2] Brents declined. After school, A.B. and four of his friends chased Brents because he refused to join their gang. This harassment, both in and out of school, became a regular occurrence. On these occasions, A.B. and several of his friends, wearing blue and white clothing, cursed at, threatened, and chased Brents, always badgering him to become a member of the Assassins. On May 16, A.B. was in a group that chased Brents to his house. Brents kept running past his house, but the group chasing him stopped and began arguing with Brents's younger sister. Someone in the group threatened to smack her. After they arrived at his house, an unnamed member of the group threatened Brents by saying, "I don't even know you, but I'ma [sic] beat you up." *Record* at 61. While the above events were transpiring, Brents's older sister drove up, attempted to intervene, and eventually called the police. At some point, while in the alley behind Brents's house, one of the group shot Brents's dog. Police responded and apprehended the youths involved, who had fled the scene.

A.B. contends that the evidence was insufficient to prove (1) that A.B. threatened Brents or attempted to coerce him into joining a gang on the day in question, or (2) the existence of a criminal gang.

When reviewing a challenge to the sufficiency of evidence, we neither reweigh the evidence nor assess matters of witness credibility. *Ellis v. State*, 725 N.E.2d 411 (Ind.2000). "We will affirm a conviction if the probative evidence and reasonable inferences drawn therefrom could have led a jury to find the defendant guilty beyond a reasonable doubt." *Id.* at 412.

The State was required to prove was that A.B. threatened Brents on May 16, 1999, and that he did so because Brents refused to join the Assassins. A.B. contends that the evidence was insufficient to prove these elements.

Brents's testimony contained a chronology of events leading up to and culminating in the May 16 incident. He explained that, while at school in March 1999, A.B. approached him and asked him to join the Assassins and Brents refused. After school that day, A.B. and several other youths chased Brents. Thereafter, Brents was chased, threatened, cursed at, and

---

1. Ind.Code Ann. § 35–45–9–4 (West 1998).

2. Occasionally in the record, the gang is identified simply as "the Assassins." *See, e.g., Record* at 56.

pressured by A.B. and others on a regular basis, and the harassing behavior was always focused upon Brents's refusal to join the Assassins. When asked what A.B. would say to him, Brents responded: "Uh, he just say, 'Why don't you be in our gang,' and stuff like that, cuss, cuss me out and everything." *Record* at 59.

Almost immediately after Brents gave the aforementioned response, he was asked to direct his attention to the May 16 incident. He explained, "They was chasing me down the street and through the allies [sic] and stuff." *Record* at 60. He then clarified that "they" referred to the same five youths who, according to his immediately preceeding testimony, had been regularly harassing him because he would not join the Assassins. Brents testified that when he saw the five youths on May 16, no words were exchanged. Rather, the five just started chasing Brents. They broke off the chase momentarily, but resumed the chase shortly thereafter, joined this time by even more youths. All of the youths were wearing Assassins colors. After members of the gang threatened Brents's younger sister, one of them shot the family's dog as they ran away through an alley.

With respect to the motivation behind A.B.'s actions on May 16, Brents testified that members of the gang did not verbally clarify that the gang's harassing and threatening behavior was occasioned by his steadfast refusal to join the Assassins. The evidence, however, permits a reasonable inference that the cause of the menacing actions toward Brents and his family was just that. The May 16 incident was the latest in a series of such incidents, with A.B. participating in all of them. It is true that A.B. did not explain his motivation on the day in question. In fact, there is evidence that A.B. and Brents did not speak to each other on that day. This is not to say, however, that no threat was communicated. "Threat" is not defined in the context of IC § 35-45-9-4. A.B. would have us construe it to refer to only verbal threats. We conclude that this interpretation is overly narrow.

■ *Webster's Third New International Dictionary* 2382 (1986) defines "threat" as follows: "expression of an intention to inflict loss or harm on another by illegal means involving coercion or duress of the person threatened ... something that by its very nature or relation to another threatens the welfare of the latter." Consistent with the commonly understood meaning of the term, as set out above, we hold that "threat" in this context includes both verbal and nonverbal behavior. Because "threats" within the meaning of IC § 35-45-9-4 includes nonverbal threats, the evidence was sufficient to support the conclusion that on May 16, that A.B. threatened Brents because Brents refused to join the Assassins.

■ In his second claim of insufficient evidence, A.B. contends that there was no proof that the Assassins was a gang. The State called as a witness Officer Arthur Rowley of the Indianapolis Police Department. Officer Rowley was a member of the Metro Gang Task Force. He testified that he had reviewed a report from the district office and classified the Assassins as a gang. Officer Rowling testified that there were nine criteria which characterize a gang, and that a person is considered to be a member of a gang if he or she exhibits three of the nine criteria. Officer Rowling testified that the report indicated that the Assassins was affiliated with the Folks gang, which in turn was affiliated with the Gangster Disciples gang. The indicia upon which he based his conclusion that the Assassins was a gang included the facts that the group had a name, the members of the gang wore gang colors, in this case blue and white, the gang was headquartered at a specific location, and the gang participated in criminal activity.

A.B. contends that, even assuming that the Assassins was a gang, there was insufficient evidence to prove that it was a criminal gang. The term "criminal gang,"

as used in IC § 35–45–9–4, is defined as follows:

> [A] group with at least five (5) members that specifically:
>
> (1) either:
>
> (A) promotes, sponsors, or assists in; or
>
> (B) participates in; or
>
> (2) requires as a condition of membership or continued membership;
>
> the commission of a felony or an act that would be a felony if committed by an adult or the offense of battery.

IC § 35–45–9–1 (West 1998).

There was evidence that at least five persons claimed membership in the Assassins. Officer Rowley indicated that the number was at least ten, and probably was higher than that. There was evidence that, because Brents refused to join the Assassins, members of the gang regularly chased, cursed, and threatened Brents and his family, and that a member of the gang shot Brents's dog. This evidence was sufficient to prove that the Assassins participated in the commission of a felony or an act that would constitute a felony if committed by an adult. *See* IC § 35–45–9–4. Accordingly, the evidence was sufficient to prove that the Assassins was a criminal gang. Finally, Brents's testimony was sufficient to prove that A.B. was a member of the Assassins.

Judgment affirmed.

NAJAM, J., and MATHIAS, J., concur.